## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| CHRISTOPHER NELDNER, Individually and on Behalf of All Others Similarly Situated, ) ) )<br><br>Plaintiff, )<br>v. )<br> )<br>CREDIT ADJUSTMENTS, INC., )<br> )<br>Defendant. ) | Case No.: 20-cv-902<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Christopher Neldner is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt incurred for personal, family or household purposes.

5.     Defendant Credit Adjustments, Inc. ("Credit Adjustments") is a foreign limited liability company with its principal place of business located at 330 Florence Street, Defiance, Ohio 43512.

6. Credit Adjustments is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Credit Adjustments is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. Credit Adjustments is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about January 7, 2020, Plaintiff received a debt collection letter from Credit Adjustments. A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A is an alleged student loan held by the U.S. Department of Education ("DoE"), used only for personal, family or household purposes, including but not limited to tuition, school supplies and living expenses while in school.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Credit Adjustments to attempt to collect alleged debts.

13. Exhibit A states that the "Balance" of Plaintiff's alleged student loan debt is $289,299.99.

14. Upon information and belief, although Exhibit A states that $289,299.99 is the "Balance" of Plaintiff's alleged debt, the balance of the relevant account is accruing interest daily at the simple interest rate of roughly 5% annually.

2

15.     Because interest is accruing daily, by the time the consumer received <u>Exhibit A</u>, notwithstanding Credit Adjustments' representation that the amount stated is the "Balance," payment of the amount stated in <u>Exhibit A</u> would not actually pay the debt in full.

16.     When the amount of the debt varies day to day, the debt collector should avoid confusion by including explanatory language in the letter. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) ("As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004).

17.     No such explanatory language was used in <u>Exhibit A</u>.

18.     In *Chuway*, the Seventh Circuit made clear that the debt collector must use the safe harbor language in *Miller* or equivalent language, in cases where the debt collector is attempting to collect the listed balance plus the interest running on it or other charges. 362 F.3d at 949; *see also Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) (a collection notice violated § 1692e by stating the "current balance" without providing notice that the amount is increasing due to accruing interest or other charges.); *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 **12-14 (7th Cir. Jan. 17, 2018) (*Miller*, including its "accuracy requirement," applies to claims brought under 15 U.S.C. § 1692e).

19.     A court in this district recently held in a virtually identical scenario that when a debt collector is, in fact, collecting interest, the collector must use the *Miller* safe harbor or equivalent language, or risk confusing the unsophisticated consumer. *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 210895 at *17-20 (E.D. Wis. Dec. 22, 2017) ("*Spuhler II*") ("State Collection's letter undeniably does not contain any form of Miller's safe harbor language. Because State Collection's letter failed to inform the Spuhlers that interest was running on the amount owed, I find there is a triable issue of fact as to whether the collection letter is confusing or unclear on its face."); *see Deporter v. Credit Bureau of Carbon County*, 2015 U.S Dist. LEXIS 55345, at *14-15 (D. Colo. Apr. 28, 2015) (debt collector violated § 1692e(2)(A) by not disclosing that interest was accruing on medical debt); *see also Snyder v. Gordon*, 2012 U.S. Dist. LEXIS 120659, at *8-9 (W.D. Wash. Aug. 24, 2012); *Michalek v. ARS Nat'l Sys., Inc.*, 2011 U.S. Dist. LEXIS 142976, at *4 (M.D. Penn. Dec. 13, 2011); *Dragon v. I.C. Sys.*, 483 F. Supp. 2d 198, 202-03 (D. Conn. 2007); *Lukawski v. Client Servs., Inc.*, 2013 U.S. Dist. LEXIS 124075, at *10-14 (M.D. Penn. Aug. 29, 2013); *May v. Consumer Adjustment Co.*, 2015 U.S. Dist. LEXIS 97162, at *15-20 (E.D. Mo. July 24, 2015); *Gill v. Credit Bureau of Carbon County*, 2015 U.S. Dist. LEXIS 58759, at *14 (D. Colo. May 5, 2014); *Smith v. Lyons, Doughty & Veldhuis, P.C.*, 2008 U.S. Dist. LEXIS 56725, at *16-20 (D.N.J. July 22, 2008); *Ivy v. Nations Recovery Ctr.*, 2012 U.S. Dist. LEXIS 78450, at *4-5 (E.D. Tenn. June 6, 2012) ("The April 28 letter indicates that plaintiff's debt continued to accrue interest and/or other charges. It is therefore plausible that the January 24 letter 'did not correctly state the amount of the debt because it failed to indicate that interest was accruing and the applicable interest rate . . . .' ") (quoting *Stonecypher v. Finkelstein Kern Steinberg & Cunningham, Attorneys*, 2011 U.S. Dist. LEXIS 88319, at *5 (E.D. Tenn. Aug. 9, 2011)); *Heffington v. Gordon, Aylworth & Tami, P.C.*,

2017 U.S. Dist. LEXIS 212570, at *16-17 (D. Ore. Dec. 28, 2017) ("At least two judges from the District of Oregon have followed two other districts in adopting an interpretation that no notice of on-going interest accrual is required *if a debt collector does not seek to collect any interest*.") (emphasis added).

20.     Credit Adjustments' failure to include explanatory safe harbor language in <u>Exhibit A</u> is material because the unsophisticated consumer may pay the amount listed on <u>Exhibit A</u>, but the payment would not actually resolve the debt. The unsophisticated consumer would have no way of knowing if the debt was resolved because <u>Exhibit A</u> fail to explain what amount Credit Adjustments is actually collecting.

21.     Credit Adjustments' failure to include explanatory safe harbor language in <u>Exhibit A</u> is also material because whether the account is bearing interest would undoubtedly be a factor in the unsophisticated consumer's prioritization of the debt. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]").

22.     Further, even if Credit Adjustments disclosed that the account was bearing interest in a previous letter, the unsophisticated consumer is not expected to reference documents sent years prior to ameliorate the confusion. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) ("an unsophisticated consumer may have lost the bill and forgotten the amount of

5

the debt completely"); *see also, Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 *17-20 (E.D. Wis. Oct. 26, 2017) ("*Spuhler I*") (the collection letter at issue in *Spuhler* was not an initial communication); *Lukawski*, 2013 U.S. Dist. LEXIS 124075, at *10, 11 (rejecting an argument that interest had been disclosed in a letter sent six weeks prior to the offending communication) ("the letter in question is deceptive in spite of the prior letter with the interest disclosure. … These arguments, requesting that the letters be read together to place notice on Michalek of increasing balances, were made and rejected by the Court.") (citing *Michalek*, 2011 U.S. Dist. LEXIS 142976, at *18-19).

23.     Plaintiff was confused by <u>Exhibit A</u>.

24.     The unsophisticated consumer would be confused by <u>Exhibit A</u>.

## The FDCPA

25.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a

6

misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5

(S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

26.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

27.     Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019)

8

("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

28.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

29.    15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

30.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

31.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## **COUNT I – FDCPA**

32.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

9

33.     By failing to disclose Plaintiff alleged debt was accruing interest, <u>Exhibit A</u> includes representations which are false, deceptive, and misleading with respect to the amount, character, and legal status of such debt.

34.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10) and 1692f.

## CLASS ALLEGATIONS

35.     Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Credit Adjustments in the form of <u>Exhibit A</u> to the complaint, (c) between June 16, 2019 and June 16, 2020, (d) that was not returned by the postal service.

36.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

37.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

38.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

39.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

40.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

41.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  June 16, 2020.

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

11